Welcome, everyone, to the Fourth Circuit this morning. I look forward to hearing from counsel in the first case, LBJ Energy v. Duty. And you're going to have to help me with your last name. Of course, Morris. Good to have you here. Thank you. May it please the Court. My name is Katherine Karsmarzik, and I represent the petitioners, LBJ Energy and Liberty Mutual Insurance Company. Good morning, Your Honors, and I would like to reserve five minutes for rebuttal. Is Liberty Mutual a party, or how do they – you mentioned your – They're the insurance company that would be paying the claim, but the employer is LBJ Energy. Yes. So they're both parties, and we represent both of them. Right. But Liberty is a party, and Mr. Duty is deceased. That's right. And he was a Virginia coal miner. That's correct, Your Honor. And so this is a black-lung case, but really this is a factual case, and the case is about maintaining substantial evidence as a meaningful standard. I guess that's part of the problem for you, though, that it is a factual case, and we defer, obviously, to the finder of fact, particularly with respect to credibility determinations. You know, the judge in this case saw the witness, the miner, who testified, and I get the point that he may have been all over the place, but ultimately the fact finder settled on a version of the facts. So how can we overturn that? Yes, Your Honor. You can overturn it because substantial evidence as a standard exists for a reason, and that standard is. . . Well, you're not suggesting that in a typical case that a miner couldn't testify to his prior employment and not be believed by a finder of fact, right? No, Your Honor. In fact, my primary point is that for 25 years the miner had claims ongoing from 1987, and for the first time in 2012 is the first time we heard about coal mine employment with K&L. Well, and the reason for that apparently is because that didn't matter in those earlier cases. Well, Your Honor, I mean, I would posit that it did, and that when you are. . . Well, in at least a couple of those cases it was stipulated that he had more than 15 years underground. Yes, Your Honor, and there are cases that indicate that some of the. . . But you have abandoned the stipulation in this claim. Yes, Your Honor, in the same way that the new evidence has come to light, and we were not aware of K&L in the first place because Mr. Doody. . . It's Mr. Doody's burden. Mr. Doody did not meet that burden. It was his job to affirmatively establish each and every place that he spent any length of time working in the coal mines, and he simply did not do so. The first place that Mr. Doody could mention that was his CM911A forms, which are filed with the Claim for Benefits, and he has claims from 1987, 94, 96, 98, 01, 06, and 10. And on those forms, Mr. Doody. . . This is the seventh claim. This is the seventh claim, but for 25 years Mr. Doody had an opportunity to mention coal mine employment with K&L, and he didn't do so, and not only did he not do so, in various pieces of testimony, Mr. Doody affirmatively testified that the first time he worked in the coal mines was in 1974 at Hagey 2. Later he said he worked in the 1970s. That's correct. And they didn't keep records, and they didn't. . . They were like cash basis operators, right? They paid everybody in cash. They didn't want to pay taxes. They didn't want to pay workers' comp. They just got people down underground and put them to work. That's correct, Your Honor, but the claimant's testimony cannot, case cannot rise above his own testimony. And in this situation, we have a situation where the claimant's case is rising above his own testimony because his testimony is that he started working in 1974 at the age of 22. Mere minutes later the claimant then testifies that he started working in 1970 at the age of 18. You're not suggesting that we'd be shocked if witnesses change their testimony and sometimes remember facts that they didn't remember before? Of course not, Your Honor, but over the course of . . . And you argued all this to the ALJ. Over the course of . . . we did, Your Honor. That's right. We did. And what's the standard of review for this? Substantial evidence. Which means under . . . Not really substantial evidence. Well, our position is that there is no evidence except for one piece of testimony. But if you have one piece of testimony, how is that? I understand all the credibility issues you raised with it, and it would be right for attack on cross-examination, but ultimately isn't it the fact finders within the discretion to decide, you know, no matter if it's inconsistent or not whether that can be believed? Yes, Your Honor, but in this . . . Substantial evidence does exist for a reason. And if ultimately we were to take . . . How well have we defined substantial evidence? Substantial evidence is more than a mere scintilla. It must create more . . . Less than a preponderance. Less than a preponderance. More than a scintilla. More than a scintilla. And it must create a reasonable fact finder, more than a suspicion. And there must be something there to satisfy a reasonable belief. If this had been a jury that had been asked to assess this and make a finding, and they ruled against you, could you attack the jury verdict because it's substantially supported? Well, Your Honor . . . Or would we have to sustain the jury verdict, wouldn't we? Well, ultimately, Your Honor . . . Based on what Judge Quattlebaum just explained. There's evidence there. If they believed it, that would be the end of it. But this is not a jury case. So you're saying this is different than a jury situation? This is an administrative . . . But the ALJ must have credited it? The ALJ did credit it. They absolutely credited it. The ALJ . . . The ALJ . . . Why wouldn't he be given as much credence and weight when it comes up here as a jury verdict? Because the ALJ also noted that the claimant had faulty memory, that his recollection of dates was undoubtedly poor, that he does not appear himself to be a reliable record keeper of his own employment. Do you claim that he had dementia or anything like that? No, Your Honor. There's no evidence. We don't have evidence of that in the record. But what we do have evidence of is a claimant who has consistently had conflicting reports as regards to his coal mine employment and his smoking history. But you just rattled off a number of factors that the ALJ actually considered. It's not like he ignored or she ignored those inconsistencies and problems in the testimony. But as Judge Quattlebaum pointed out, she took all that or he took all that into consideration and ultimately decided against you. I just find it difficult to see how we can conclude otherwise. Well, Your Honor, I believe you can conclude otherwise based on what the Board's dissent set forward. And the Board said that the claimant not listing any employment with K&L in any of the six prior claims he filed, including claims that are closer in time to his alleged employment at K&L, wherein it would have been fresher in his mind, is itself probative evidence that refutes his recent testimony. Can you maybe switch and talk a little bit about not just the K&L, whether Mr. Doody worked there, but the length of time? I thought the more compelling argument, I'm not sure if it gives us the ability to look beyond what the ALJ did, was that the finding that it would be speculative to determine the period of time, not whether they worked, but the period of time. Can you comment on that? Well, Your Honor, I think it's speculative in that there's absolutely no evidence in the record other than one instance of the claimant saying that he worked for nine months at K&L. That is where the period of time comes from. There's no documentary evidence. He didn't fill out any forms to suggest that he had spent any different length of time at K&L. It's this one specific instance. But nine months is in there, and that roughly equates to the .75 year that the judge credited, right? Yes, Your Honor. It ultimately is an issue about whether or not that one specific instance from an unreliable witness who has been notoriously unreliable throughout the past 25 years is enough to offset 25 years of contrary negative probative evidence. Do you have to win on the 15-year presumption on both the K&L employment and the Coalfield employment to get under 15 years? Yes, Your Honor. And Coalfield cap is actually a little different from K&L. Coalfield cap is a situation where the claimant had testified that he had worked there doing underground coal mining. But then in his 2012 hearing, he clarified that Coalfield cap was actually not coal mine employment. It was a community action project put in place by the Johnson administration, and when asked whether he was building houses or doing something along those lines, the claimant answered yes. The community action project, there was no evidence put forward that this community action project was actually involved with coal mining whatsoever. And the board highlighted this in their dissent, noting that the claimant mentioned working for a coal company but also this community action project. He put forth no evidence that the community action project involved coal companies or that the coal company he mentioned paid the claimant for his work at this community action project. The problem, though, is that even if we agree with you, and I think the appeals board came to the same conclusion, they were willing to assume that even if a mistake had been made, the error would have been harmless because of the fact that you can rely on the K&L employment to get to that 15-year employment period. Is that right? Yes, Your Honor. The K&L employment to our case is incredibly important, and really the case will hinge on that. And again, our point there is that substantial evidence does exist for a reason, and it is to check situations exactly like this one. If you lose on the 15-year issue, is that the end of it? No, Your Honor. We still have three other assignments, one of which is the length of spoken history, and that also is a factual issue that depends on whether or not the claimant's testimony is reliable. But with regard to Dr. Mills and Dr. Osterling's reports, in that case the ALJ stated that Dr. Mills' credentials were not in the record, but ultimately that didn't matter because the UVA would not hire someone unqualified. But this is contrary to Fourth Circuit law. In CB Mining v. Addison, the court reversed an ALJ decision when the ALJ ignored the qualifications of physicians. So it makes sense that if the ALJ could be reversed for ignoring qualifications, then they certainly could be reversed for dismissing the need for them altogether. But they didn't dismiss the need for them. I mean, I don't think that as I read the judge's decision, there was not a finding that I recall that those weren't important. It was just that they were assumed. Your argument is that they are assumed rather than put forth in evidence. Is that correct? My argument is that these qualifications cannot be assumed. And that it is necessary that they are admitted into the record, that they are considered, and that based on that, the judge decide whether or not the opinion was documented in reason because the qualifications of physicians in black lung cases is paramount. How do you all usually put them in the record? You just put their resume in there? Yes, Your Honor. And you all use the same doctors all the time. I mean, they testify for one side and testify for the other side. The same doctors on the same side in every case. Yes, Your Honor. Isn't that right? I see that I'm out of time. I understand. Okay. You're out of time. Isn't that right? We do use the same doctors, but just because some things. Yeah, you have the company doctors and the claimant doctors. But procedures should be the same every time too. We see them all. They come up here. Well, same doctors. Yes, Your Honor. And you're saying that their doctors were bad in that case, and when they lose, they come up here and say you're a doctor. Anyway, you see the same doctor. We do, but the point is. And you all know them, and you know every one of their qualifications. Your Honor, standing here today, I cannot tell you Dr. Mills' credentials because they were not in the record. But they're in probably hundreds of other records. You all know all the ALJs. The BIA knows all these doctors. Yes, Your Honor. It is a small world. I really appreciate it. Thank you. Thank you very much. Thank you. Mr. Austin, you prepared to give up? Sorry, Your Honor. Are you prepared to give up now? No, Your Honor. Good morning. May it please the Court, my name is Brad Austin. I'm here today to represent the respondent in this case. Where are you from, Mr. Austin? I'm from Norton, Virginia. From Norton? Yes, Your Honor. Is that in Buchanan County? Close. It's in Wise County. Wise County, okay. Yes, Your Honor. I'm here today representing the widow of Mr. James Doody, Brandon Mills. Mr. Doody has passed away. That's correct, Your Honor. So this is a claim now that it's a widow issue. Well, Judge, we have to be careful in calling it a widow's issue because, really, Federal Black Lung has two different claims. One for a living minor that survives the minor and continues with the widow, like this case, and then a separate standard for an actual widow's claim. So even though the widow is pursuing this claim, it's still a living minor's claim, technically. Okay. But, unfortunately, he did pass away. You're correct, Your Honor. As you just heard, the petitioner would have his court reverse two factual findings in this case. The length of coal mining employment history and the cigarette smoking history. What's your position that the judge said that the inconsistency or the lack of testimony about K&L for all this time was not probative? Yes, Your Honor. Isn't that an error? I mean, it may not be enough to—it may not be a—a credibility issue may be one thing, but when the judge says it's not probative, that seems like that's a legal error to me. What's your response to that? Your Honor, I think that's a great question. In fact, when I was studying to do this argument, I was worried about that when I first saw that. But this is a voluminous file, and I went back and reviewed the prior hearing transcripts, and as the other judge pointed out, employers' counsel actually stipulated to a length of coal mining employment at the prior hearings. So that issue was not really— I thought they stipulated more than one proceeding. They sure did, Your Honor. In the hearing—I'm sorry. No, go ahead. I apologize. I was going to say, Judge, in the hearing in 2003 before Judge Stanselgam, he accepted the party's stipulation of 15.76 years. That's a joint appendix 175. Are you arguing or suggesting that there is stop now from contesting this issue? No, Your Honor, because I believe this court would hold—and I'm not prepared to cite the case, but I've had experience with this. Following the 15-year presumption, prior stipulations are typically binding, but I do believe there is one case out there that says prior stipulations in a pre-PPACA case, Patient Protection Affordable Care Act case, is not binding on stipulations thereafter. I believe that's the case. I don't know the case, though. But they've been a moving target. Well, that's true, Judge. But in that 2003 hearing, Judge Stanselgam accepted that stipulation, so the parties didn't go into that in depth. In 2007, ALJ Wood accepted the same stipulation of 15.76 years, and that's a joint appendix 337. And then in the 2007 hearing, actually, the petitioner's law firm questioned the minor further about his employment history, and he said, why did you only note 16 years on your second filing? And he said, well, the reason for that, the claimant testified, the reason for that is I couldn't prove the rest. I knew there was more out there, but I was just writing down what I felt like the records would suggest. But the K&L mining, to answer your question, Judge, the K&L mining was credible at this hearing, and I don't think there's any case law out there that tends to say that a man stopped from remembering later on. So your position is that it may be error to say it's not probative, but there was nevertheless evidence that the judge could rely on? Yes, Judge, I think that's fair. You would agree it's probative on the issue of credibility. I do, Judge, I do. But I would like to state a couple more things that I think would put that issue to rest, because when he did testify about K&L mining, there's some testimony that follows it that really credits that testimony. For example, he remembered that the K was Kaiser and the L was Lawrence. That's K&L mining. He remembered that he had nine months of employment. He remembered that they did not keep accurate records, and he remembered that he ran a Wilcox miner for that particular company. A Wilcox miner is actually not used anymore, and it's actually a pretty difficult piece of equipment. But all of this testimony you can find out. That's a continuous miner? Yes, it is, Your Honor. Up on the working face. That's correct, Your Honor. That's the dustiest place in the coal mine. That's correct, Judge. It's a very dangerous piece of equipment, and he went on in that hearing after discussing K&L mining to discuss the particular jobs he was doing. And you can find that at Joint Appendix 646 through 647. To use a really poor example, I remember at one point in my life that I took biology, but I couldn't tell you what year it was. And I say that to say this particular miner can't necessarily recall the date that he began. When you were asked if you took biology for 10 years, did you fail to remember that you took it, and then the last time decided you did? It's a fair question, Judge. But I tell you, I think that that testimony that followed the K&L really solidifies that his memory came back to him. That's probably a better argument than the biology thing. I think it is, Judge. That's why you're there and I'm here, Your Honor. But I tell you, I do want to move on quickly to Coalfield Cat because I think the other judge made a really good point. I think it was you, Your Honor. I apologize. I think you stated that the employer needed both. They needed both K&L and Coalfield Cat. With regard to Coalfield Cat, as far back as the 2007 hearing, the claimant did describe Coalfield Cat in 1970 and 1971. So I think it's important to point that out. That was not new testimony at the 2012 hearing. That's at Joint Appendix 368. And the employer, in fact, deposed my client in 2010, and he again mentioned that employment in 1970, and that's at Joint Appendix 569. And then he was specifically asked at the 2012 hearing, and he stated that was underground coal mining. There is a discrepancy in this record. It's listed as Coalfield Gap. It's listed as CO Coal. The miner doesn't know exactly which company the name was, but he's testified consistently on that point, is what I'm trying to say. And when we talk about 15 years, it was a credibility determination for the administrative law judge to go beyond just the Social Security earnings record in this case. The employer conceded in its petition that the record would establish at most 14.87 years, and it's briefed at page 28. So when the administrative law judge found that there were three coal companies that employed the miner, and they either didn't pay him or they didn't keep accurate records, I think it's pretty reasonable to get an extra, what is that, 1.13 years of coal mining. He's testified to months, even years beyond that. And when we look at the record as a whole, there's several things that substantiate this finding. First of all, he did file seven claims, and the only claim that he did not allege greater than 15 years in was the very first one that he filed in 1987. But there's a good reason for that. He was still working in 1987. When did he finally quit working in the 90s? He quit working in 1993, Your Honor. So in 1987, he alleged 13 years. That would have been the closest to his actual coal mine employment history, and he worked six years thereafter. That would total 19 years. That actually was the finding of the past administrative law judge, 19 years. Is he a Wise County miner? Is that where he's local? He was, Judge. I think he lives about 10 minutes up the road from our office. He was a Wise County miner. Yes, Your Honor. Also, Judge, he told at least a dozen doctors how long he worked, and the histories we have are between 15 years and 27 years. Not one of them, and this was way before the 15-year presumption was invoked. Not one time did he ever state that he worked less than 15 years. So as far as that issue goes, I think you've got substantial evidence to support that finding. I don't know the total number of years, and I'm not sure that this court needs to necessarily state that it was precisely this number, but what this court should affirm is that it's beyond 15 and should invoke the 15-year presumption. Now, employer's second argument was regarding a cigarette smoking history, and I'm not going to stand up here and tell the court that the cigarette smoking history was a straightforward issue. The administrative law judge really struggled with that issue, in fact, and I think the Benefits Review Board probably said it best when it stated, quote, due to the lack of consistency in both the reported duration of claimant's smoking history and the quantity that he smoked, the administrative law judge rationally determined that the highest and lowest reported histories were outliers and found that claimant had a 20-pack year smoking history based on the most frequently reported histories in this record, and that's at Joint Appendix 744. I think that's a perfectly reasonable way to look at the ALJ's weight on the evidence. I'm sorry. You mean to split the baby? Basis is the way to judge. Judge, this was tough. I think when you look at the record— I mean, there's got to be some rational basis for coming to 20, and just simply picking something in the middle seems a little bit odd and irrational. Well, Judge, I think this court has upheld averaging smoking histories in prior cases. There's really no set way for a court to really take these facts and make a determination, and I think it's fair to say that neither my client nor the employer was probably satisfied with this cigarette smoking history, which to me probably suggests the judge got it right, but really they named the most frequently cited smoking history. So while it may not be the outlier on the high end or the outlier on the low end, it was somewhere in the middle. It was reasonable, and she did say at least 20 years, and I would note that it's a good segue into the last argument because the employer would have this court believe that the only reason Dr. Rosenberg was discredited in this case was because he had an elevated cigarette smoking history, but that's really not the case. The judge gave weight to Dr. Haber's medical report, and Dr. Haber noted that the 20-pack year smoking history was significant and substantial. So we don't have a situation here where we have one doctor trying to downplay cigarette smoking and another is trying to elevate cigarette smoking. Those two doctors really considered a pretty close cigarette smoking history, and when we turn to whether or not substantial evidence supports the ALJ's weighing of the medical reports in this case, I think you can really contrast those two medical reports. Coal mine dust and cigarette smoke both are known to cause chronic obstructive pulmonary disease. The employer in its brief states that Dr. Rosenberg was only discredited because of that elevated cigarette smoking history, and that's simply not the case. In fact, there was three other reasons why the Administrative Law Judge discredited Dr. Rosenberg, and any one of these three would have been sufficient for this court to affirm. What's your position? I don't mean to interrupt you, but I want to hear your position on the credentials of the expert before you yell a lie. I'm sorry. Your Honor, first, I think the Administrative Law Judge has the authority to consider the record as a whole and draw inferences from the record. She noted that that particular expert worked at UVA at a teaching facility, and the Administrative Law Judge said that that facility would not hire a doctor to do pulmonology reviews if he were not a pulmonologist. That's not in the record. I can't deny that, but I think that's a pretty reasonable inference for a fact finder to make. I don't think UVA would hire a non-pathologist to do pathology work. I think that's reasonable. But, Judge, even if it's not, let's assume that the employer is right on that argument. It does not discount the weighing of the evidence with regard to legal pneumoconiosis and COPD. Again, I just want to stress that point. Even if that's correct, you still do not need to remand this case because Dr. Rosenberg was the employer's expert that supplied the medical opinion that cigarette smoking and not coal mine dust was the cause of his total disability. And Judge Kirby properly discounted him because she found his weighing of the FEV1-FEC ratio and the typical patterns of impairment that coal dust causes versus cigarettes to be hostile to the act and not in line with the presumption. I'm sorry, with the preamble to the regulations. Also, she found the particle size of cigarette smoking and coal dust and his averages applied to this particular client to not be reasonable. These are all credibility determinations that the administrative law judge had to make. And there's three parts to that. She weighed all of the employment history. She made a factual finding. She weighed all of the cigarette smoking history. She made a factual finding. She weighed conflicting medical reports. She made a factual finding. Each piece of that is supported by substantial evidence. It's rational. It's supported by substantial evidence. And it's in accordance with applicable law. Were you involved at that stage? Your Honor, I think I was in middle school at that time. I mean the ALJ hearing. The ALJ hearing. I was not. I was in college. Okay. But. Taking that biology class. That's right. That's right, Your Honor. Absolutely. But if the court has no more questions, I would just respectfully request that Your Honors affirm the decision in order awarding benefits issued by Judge Kirby. Thank you, Mr. Groskamp. Thank you. Do you have some time? Yes, Your Honor. Your Honor, my first point in response to Mr. Austin is that he stated that the claimant regarding Coalfield Cap had some confusion, called it Coalfield Gap, CO Coal Company, etc. While I would certainly agree that Coalfield Gap is similar to Coalfield Cap, the claimant's testimony is fairly clear that CO Coal Company P is different from that of Coalfield Cap. And specifically, it's because the claimant said, yes, I work for CO Coal Company P, something like that. One's a coal mine, one's a cooperative that was part-time for the government through schools. So it's fairly obvious, I think, from the claimant's own testimony that that was different entities. Does that, and I hear your argument that the judge's conclusion that they were one entities with two facets or departments, I'm not sure where that came from. But if you, but taking that issue aside, do you, was there not testimony about, from Mr. Doody, that he had been working with the CO Coal Company enough by itself, irrespective of the CAP? No, Your Honor. In fact, there was not. He mentioned it only in this one instance where he said that, oh yeah, I worked here, but I also worked at Coalfield Cap. And that's the only instance of testimony. There was no real reason. What's wrong with just saying, he said he worked at the coal company, why is that not enough on that basis? We have no idea when, where, or how. Well, didn't he say it was, when he was talking about C, Coalfield Cap, he was really referring to CO Coal Company and that you could use the time that he had associated with CAP in the first place to the mining company? Your Honor, that was not clear from the testimony. And in fact, from the testimony, he answered affirmatively that the Coalfield Cap was work he did right out of school, which is around the approximate age of 18, which according to Social Security earnings record, when he had earnings for Coalfield Cap, would have been around the age of 18. And that actually brings me back to an argument with KNL, the claimant testified that he would not have started working in the coal mines until he was 18. His Social Security earnings records established that he worked at Coalfield Cap in 1970. He turned 18 in April of 1970. He testified that he worked at KNL prior to Coalfield Cap. Well, he either worked, that would put him before the age of 18. So even in this 2012 hearing, it's not just the lack of probative evidence for 25 years. It's also within this 2012 hearing, there's all kinds of conflicting evidence. On one hand, he says he started working at the age of 22. On the other hand, he says he started working at the age of 18, mere minutes later. He says that he wouldn't have been allowed to work until he was 18. But the math works out that his alleged employment at KNL would have occurred before the age of 18. The ALJ addresses this by stating that it's plausible that the claimant would have started working in the mines since he quit school in the 10th grade, but there was no testimony to that. How old was he when he quit school? In the 10th grade, approximately 16. I mean, that's just an assumption. And the claimant testified that the number of instances were directly conflicting testimonies in this record. The claimant testified he was paid under the table, but in his deposition, he testified that he never received any illegal cash and was paid mostly by check. It's one or the other. And here we have a situation where the claimant is just, he's saying what works to get himself the 15-year presumption since it was invoked in 2010. Additionally, and another way to point this out is the claimant, while testifying about KNL, Mr. Austin mentioned that the testimony that came afterwards was probative. I would agree, actually, because the claimant also testified after that that he worked for KNL. Well, on cross-examination, he was shown the Social Security's earnings record, which shows that he worked for DPL Coal in 1981 and 1982. And then the claimant affirmed that, oh yeah, he gets confused, and in fact, he did work for DPL Coal in 1981 and 1982. Well, that certainly doesn't put it before KNL in approximately 1970. Additionally, one final point. This is a man who has consistently fabricated the facts and stated whatever has come into his mind at that time. And nowhere is that more important than at Joint Appendix 83 and 84. It's a medical record from Dr. Robinette, who is the claimant's physician from 1995. So before all the rebuttable presumption, I see that I'm out of time. Go ahead and finish your thought. So Dr. Robinette, he told Dr. Robinette that he smoked two to three cigarettes per day. But the claimant's own physician noted nicotine staining on his hands and noted an evidence of an elevated carboxyhemoglobin level of 11.2 percent, which is consistent with two packs of cigarettes per day, not two to three cigarettes per day. And Dr. Robinette at this time stated that if Mr. D did not stop smoking, his prognosis was poor. Thank you, Your Honor. Thank you very much. We appreciate it. Thank you. We'll come down and re-counsel and then go to the next case.
judges: Robert B. King, Albert Diaz, A. Marvin Quattlebaum Jr.